# Exhibit B

**Philadelphia Insurance Companies**

**Claims Department**

P.O. Box 950, Bala Cynwyd, Pennsylvania 19004-0950
800.765.9749 • Fax: 800.685.9238 • www.phly.com
NASDAQ: PHLY

**Via Facsimile and Certified Mail,**
**Return Receipt Requested**

Monday, March 27th, 2006

Gateway Healthcare, Inc.
249 Roosevelt Avenue, Suite 205
Pawtucket, RI 02860

Attn: Ann Rogan

| | | |
|---|---|---|
| Re: | Insured: | Gateway Healthcare, Inc. |
| | Policy #: | PHPK126288 |
| | File #: | PHNP05030171368 |
| | Date of Loss: | 12/17/05 (discovered) |
| | Type: | Water Damage |
| | Location: | 1471 Elmwood Avenue, Cranston, RI |

Dear Ms. Rogan:

As you know, the Philadelphia Indemnity Insurance Company has been investigating the property damage to Gateway Healthcare, Inc.'s building at 1471 Elmwood Avenue, Cranston, Rhode Island (the Building), which was caused by water flowing from sprinkler system pipes and fittings that had frozen and ruptured just prior to December 17, 2005. Philadelphia has now completed its investigation into this loss. I regret to inform you that based on our investigation and our review of the relevant provisions of Philadelphia policy number PHPK126288 (the Policy), we have determined that the Policy does not afford coverage for Gateway's losses. Specifically, all loss and damage caused by the sprinkler leakage event is excluded by the Policy's "Vacancy and Unoccupancy" Loss Condition because, (i) the Building was vacant for more than 60 consecutive days before the damage occurred; and (ii) Gateway failed to protect the sprinkler system from freezing during that period. Because the Policy does not provide coverage for this loss, Philadelphia must respectfully decline to issue payment. Our position is explained in greater detail below.

**<u>Philadelphia's Investigation of the Loss</u>**

On December 19, 2005, Philadelphia received notice of this loss from Gateway's insurance agent indicating that the Building's sprinkler system "froze and burst flooding the entire building."

Philadelphia Indemnity Insurance Company immediately retained Vincent Pellegrino Insurance Adjusters, Inc. to assist with the investigation and evaluation of the loss. On December 21, 2005, Brian Pellegrino inspected the Building, discussed the circumstances of the loss with you, and obtained your recorded statement. He also obtained a signed Non-Waiver Agreement from you. Since that initial meeting, Mr. Pellegrino and Philadelphia have gathered additional information and documents from Gateway and its legal counsel concerning the Building, its occupancy status, and related matters. Additionally, a sprinkler expert retained by Philadelphia recently examined the Building and its sprinkler system. Based on these and other investigative steps, we understand the facts surrounding this loss to be as follows:

The Building is a two-story office building with a full basement, and measures approximately 12,000 square feet. It features a wet-type automatic fire protection sprinkler system. The Building is also equipped with four roof-mounted HVAC units that are designed to provide heat and air conditioning.

During our investigation, we gathered information regarding the Building's use and occupancy prior to the loss. In your initial discussions with Mr. Pellegrino, you informed him that the Building had been unoccupied since Gateway acquired it in July 2005. Mr. Pellegrino also learned that the Building did not contain Gateway's business personal property prior to the loss. In your recorded statement, you informed us that Gateway planned to substantially renovate the Building before taking occupancy, but that the actual renovation work was not scheduled to begin until January 2006. Documents Gateway recently furnished to us confirmed that fact. As our investigation continued, you and your counsel provided Philadelphia additional documentation reflecting Gateway's plans for the renovation, its efforts to assess its space needs, its communications with certain contractors and vendors, and other planning efforts. Nevertheless, despite Philadelphia's requests, Gateway has not produced any bills, invoices, cancelled checks, or other documents demonstrating that any renovation or construction work had *actually* occurred within the Building at any time within the sixty consecutive days immediately preceding the loss. In fact, Gateway's counsel has confirmed that Gateway has no such documents.

Mr. Pellegrino's initial inspection of the Building on December 21, 2005 confirmed that the loss occurred when water escaped from certain frozen sprinkler pipes and fittings that were located on the second floor of the Building. By the time the loss was discovered, water had accumulated in the Building's basement to an approximate depth of five to six feet. Extensive property damage was observed throughout the Building.

Since the loss involved the freezing of sprinkler pipes in an <u>unoccupied</u> building, we investigated what measures, if any, Gateway took to heat the Building and otherwise protect the sprinkler system from freezing prior to the loss. In your recorded statement, you said that the Building's HVAC units were operational as of the date of loss and that Gateway had not experienced any difficulties with any of them prior to that date. You also stated that the thermostats in the Building had been set to a temperature of 55 degrees Fahrenheit; that Gateway employee Dennis Carpenter was checking on the Building and the thermostats on a weekly basis prior to the loss; and that during his visits, Mr. Carpenter did not notice any problems with the heating system. These and other representations led us to believe that Gateway had heated the Building prior to the loss.

As we continued with our investigation, however, we learned from Gateway's counsel, Henry Swan, that the Building's natural gas supply had been disconnected at some point prior to Gateway's

acquisition of the premises, and that the gas supply was not reconnected prior to the date of loss. Mr. Swan also clarified that while Dennis Carpenter periodically verified that the electrical components of the heating system (specifically, the thermostat and the "blowers") were operational before the date of loss, "there was no gas supply to provide the heat" to the Building. Based on these statements, we now understand that the Building was not heated during the colder weather months of October, November and December 2005.

As you are probably aware, the sprinkler leakage loss was immediately preceded by three consecutive days of freezing temperatures in the Cranston area, December 13, 14 and 15, 2005. During this time, water contained within the pipes and fittings of the sprinkler system of the unheated Building would have frozen, causing pipes, fittings and sprinkler heads to crack and fail. When the temperature began to moderate, the ice inside the pipes thawed and water began to flow from the sprinkler system, causing the property damage in question. The freezing and rupturing of sprinkler system equipment is not surprising given that the Building was completely unheated for a prolonged period, and that there were holes in the roof structure above the affected pipes and fittings through which frigid outside air could pass. Because the Building was unoccupied, the water likely escaped from the sprinkler pipes and fittings for a day or more before a neighbor finally discovered it exiting the Building through a bulkhead on December 17, 2005.

<u>Coverage</u>

Based on the facts stated above, Philadelphia has determined that the Policy provides no coverage for damage to the Building.

As you may recall from our prior correspondence regarding this claim, [the Policy's "Building and Personal Property Coverage Form" grants coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The term "Covered Causes of Loss" is defined in the "Causes of Loss - Special Form" to include "Risks of Direct Physical Loss unless the loss is: (1) Excluded in Section B, Exclusions; or (2) Limited in Section C, Limitations; that follow."]

An endorsement to the Policy entitled "Rhode Island Changes" adds the following condition to the Building coverage:

**RHODE ISLAND CHANGES, FORM CP 01 29 03 04**

**D. Vacancy and Unoccupancy Loss Condition**

**1.** For insurance provided under the Building and Personal Property Coverage Form...the **Vacancy** Loss Condition is replaced by the following:

**VACANCY AND UNOCCUPANCY**

* * *

**b.** If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

* * *

(b) Sprinkler leakage, unless you have protected the system against freezing.

* * *

(d) Water damage;

* * *

**d.** A building is vacant when it does not contain enough business personal property to conduct customary operations.

**e.** Buildings under construction or renovation are not considered vacant.

(Rhode Island Changes endorsement, p. 1)

The information and documents Gateway has produced to date confirm that the Building was vacant for more than 60 consecutive days before the loss occurred. First, it is apparent that Gateway did not maintain sufficient business personal property in the Building to conduct its customary operations in that space. Indeed, Gateway did not plan to move any office furniture, equipment or other property into the space until January 2006 at the earliest.

Second, though Gateway claims that the Building was "under construction or renovation" prior to the loss, the documents and information it has provided to date do not support that conclusion. There is no question that during the sixty days immediately preceding the loss, Gateway was actively *planning* a substantial renovation of the Building and was communicating with its employees and outside designers, contractors and vendors regarding its space needs and related matters. It also appears that Gateway may have begun to make some decisions regarding the purchase of office furniture during that time period. However, to be considered "under construction or renovation" within the meaning of the Vacancy and Unoccupancy provision, a building must have undergone some substantial and ongoing construction-type work, such as demolition, carpentry, HVAC, plumbing, electrical, flooring, *et cetera*, during the sixty days immediately preceding the date of loss. At no point during the months of October, November or December 2005 was any such work undertaken in the Building. Gateway's inability to produce any bills or other documentation regarding actual renovation or construction work performed before the loss confirms that fact. Because the Building did not contain sufficient business personal property to conduct customary operations and was not "under construction or renovation" at any point during the 60 consecutive days preceding the loss, we can only conclude that the Building was "vacant" within the meaning of the Vacancy and Unoccupancy Loss Condition of the Rhode Island Changes endorsement.

As explained above, the Policy excludes all loss or damage caused by sprinkler system leakage in a "vacant" building unless it appears that the insured "protected the system against freezing." Gateway failed to do so in this instance. As you know, the Building's sprinkler system was a wet-type sprinkler system, meaning that water was present in the risers, cross-mains and branch lines at all times. Since wet systems are particularly susceptible to freeze-ups in the Northeast, the minimum that Gateway should have done to protect the system from freezing was heat the Building so that a freeze-up would not occur. The March 10th letter from Gateway's counsel reveals that the HVAC units were not connected to a natural gas supply prior to the loss, and therefore, did not supply heat to the Building. Since the Building was vacant and Gateway failed to protect the sprinkler system from freezing, the Policy explicitly excludes all loss and damage caused by the sprinkler leakage event discovered on December 17, 2005.

Although it has denied Gateway's claim based on the Vacancy and Unoccupancy Loss Condition, Philadelphia expressly reserves the right to rely upon other terms and conditions of the Policy in responding to this claim. Neither this letter nor any other act or representation of Philadelphia, its agents or representatives should be construed as a waiver or compromise of any rights granted to Philadelphia under the Policy or applicable law, or of any other term or condition of the Policy.

We will be available to you to discuss the position we have taken. Should you, however, wish to contact the Rhode Island Department of Business Regulation, you may do so at the address listed below. In certain limited circumstances the Department may have jurisdiction pursuant to R.I. Gen. Laws § 27-9.1-6 and therefore you may be able to have the matter reviewed by the Department. The Department of Business Regulation does not have authority to settle or arbitrate claims, determine liability or order an Insurer to pay a claim.

Rhode Island Department of Business Regulation
Insurance Division
233 Richmond Street
Providence, R.I. 02903

The Rhode Island Department of Business Regulation, Insurance Division can be contacted by telephone at (401) 222-2223.

Thank you for your attention to this matter.

Sincerely,

John P. Kirby
Asst. Vice President - Claims
Philadelphia Indemnity Insurance Company

CC: Butler & Messier, Inc.
P.O. Box 2270
Pawtucket, RI 02861

Attention: Kathleen Noury

Henry M. Swan, Esq.
Davis, Kilmarx, Swan & Bowling, LLP
101 Dyer Street
Providence, R.I. 02903

Vincent Pellegrino Ins. Adjusters, Inc.
P.O. Box 72697
Providence, RI 02907.

Attention: Brian Pellegrino