UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GATEWAY HEALTHCARE, INC. | : | |
| | : | |
| VS. | : | C.A. No. 08-170/S |
| | : | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | : | |

**GATEWAY HEALTHCARE, INC.'S STATUS CONFERENCE STATEMENT**

This is a declaratory judgment action that seeks to determine the parties' rights and obligations under a policy of insurance. On December 17, 2005, Gateway Healthcare, Inc.'s ("Gateway") building located at 1471 Elmwood Avenue in Cranston, Rhode Island, (hereinafter referred to as "the building" or "the property") was severely damaged when the pipes burst and water flooded the building (hereinafter referred to as "the loss"). The total property damage claim, including the clean-up of the water damage, is $522,594.00. On March 26, 2006, Gateway's insurer, Philadelphia Insurance Companies, ("Philadelphia"), denied the claim for property damage because the vacancy and occupancy endorsement operates to bar coverage.

**Coverage Issues:**

The policy issued by Philadelphia Insurance Companies to Gateway Healthcare contains an endorsement[1] entitled "RHODE ISLAND CHANGES", that reads as follows:

---

[1] "[An endorsement becomes] part of the [insurance] contract to the same extent as if it were actually embodied therein, provided, of course, that [the endorsement] * * * [1] has been lawfully and sufficiently attached to the policy, or [2] referred to in the policy, or [3] both attached and referred to in the policy * * * ." 2 Couch on Insurance § 18:17 at 18-24-26 (Lee R. Russ, 3d ed. 2005).

GATEWAY HEALTHCARE, INC. :
VS. :
PHILADELPHIA INDEMNITY :
INSURANCE COMPANY :

**VACANCY AND UNOCCUPANCY**

*****

**b.** If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

*****

**(b)** Sprinkler leakage, unless you have protected the system against freezing.

**(d)** Water damage;

*****

**d.** A building is vacant when it does not contain enough business personal property to conduct customary operations.

**e.** Buildings under construction or renovation are not considered vacant.

**Gateway's Position with Supporting Authorities:**

Gateway's position is that the building was "under construction or renovation" and that Gateway "protected the pipes against freezing".

Subsection **e.** of the policy's Rhode Island "Vacancy and Unoccupancy" endorsement, states that "Buildings under construction or renovation are not considered vacant."

In Rhode Island, in construing an insurance policy provision, a Judge will apply certain well-established rules. First, the Judge will interpret the terms of an insurance policy "according to the same rules of construction governing contracts." *Northwestern Insurance Co.,* 882 A.2d 594, 595 (R.I. 2005). Second, the Judge must give the language contained in the endorsement its plain and ordinary meaning. When the terms are clear

GATEWAY HEALTHCARE, INC. :
VS. :
PHILADELPHIA INDEMNITY :
INSURANCE COMPANY :

and unambiguous, the task of judicial construction is at an end. The Court then applies the contract terms as written, and the contract terms bind the parties. *Textron, Inc. v. Aetna Cas. & Sur. Co.*, 638 A.2d 537, 539 (R.I. 1994).

Philadelphia takes the position that for "a building to be considered under "construction or renovation" within the meaning of the Vacancy and Unoccupancy provision, a building must have undergone some substantial and ongoing construction-type work, such as demolition, carpentry, HVAC, plumbing, electrical, flooring, *et cetera*, during the sixty days immediately preceding the date of loss." Philadelphia asserts that "during the months of October, November or December [no] such work was undertaken in the Building."

Philadelphia's policy does not define the words "construction" and "renovation" in its policy.

The plain meaning of the word construction, in its ordinary and popular sense, does not include steps taken to renovate an existing building. The words construction and renovation are not synonymous--they do not encompass the same type of work that may be performed on a building.

Construction is defined as "the act of putting parts together to form a complete integrated object," and the "creation of something new, as distinguished from the repair or improvement of something already existing." (Webster's 3rd New Internat. Dict. (1986) p. 489; Black's Law Dict. (6th ed. 1990) p. 312, col. 2.). To renovate, on the other hand, is defined as "restor[ing] to life, vigor or activity," and "clean[ing] up, replac[ing]

worn and broken parts in, [and] repair[ing]." (Webster's 3d New Internat. Dict., *supra*, at pp. 1922-1923; Webster's New World Dict. (2d college ed. 1982) p. 1203.)

In construing the vacancy clauses that do not contain the "renovation" exception, Courts[2] have recognized that they exist to balance a willingness by insurers to extend coverage through the construction period to guard against excessive vandalism or accidental loss occurring in a vacant building. Buildings under construction will usually have workers on the property on a daily basis, which deters potential vandals and encourages the early discovery of fire or water damage. Renovation, however, does not require daily involvement with the property. See *Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 472 (7th Cir. 1986).

In an Ohio case interpreting the identical "construction or renovation" exception to the vacancy exclusion, the Court noted that the purpose behind the vacancy clause in the insurance policy was to protect the insurer from the very sort of liability that is at issue in this case. The Court further stated that "[r]enovation contemplates something being done *at the building*, not merely planning to renovate, remodel, or refurbish. However, the way the policy is written, even one day of renovation done within the previous sixty days would be sufficient to overcome the vacancy clause. The removal of a stage and some coat racks would be sufficient to constitute renovation." *Martin Belich vs. Westfield Insurance Company, 2000 Ohio App. LEXIS 6212, citing Will Realty Corp. v. Transportation Ins. Co.* 22 Mass. App. Ct. 918, 492 N.E.2d 372 (1986).

[2] There are no Rhode Island decisions interpreting this endorsement.

GATEWAY HEALTHCARE, INC. :
VS. :
PHILADELPHIA INDEMNITY :
INSURANCE COMPANY :

In Gateway's case, there was "something done at the building". Gateway's property manager and several other employees conducted inspections and visits to the site in connection with obtaining information, planning proposals for the renovations and familiarizing Gateway staff and potential contractors with the site. Contractors visited the building for the purpose of inspecting the electrical and HVAC system and to give quotes for repair and replacement. These facts demonstrate that Gateway had moved beyond the planning stages and had begun to renovate the building.

**Gateway took reasonable measures to "protect" the "system" against freezing.**

The evidence will show that Gateway continuously monitored the temperature in the building. When the fans went on in response to adjusting the thermometer, and the thermometer reflected an adequate temperature, Gateway's people reasonably assumed that the heat was working. Gateway did not know, nor was there any reasonable basis for them to know, that the natural gas in the building had been shut off by the prior tenant.

GATEWAY HEALTHCARE, INC.

By its Attorneys.,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio (R.I. Reg. No. 3459)
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
(401) 831-5400

GATEWAY HEALTHCARE, INC. :
VS. :
PHILADELPHIA INDEMNITY :
INSURANCE COMPANY :

**CERTIFICATION**

To:

Mark T. Nugent, Esq.
Mark T. Nugent, Esq.
Michael J. Marcello, Esq.
MORRISON MAHONEY, LLP
Ten Weybosset Street, Suite 900
Providence, RI 02903

I hereby certify that on the 10th day of June, 2008, I caused a true copy of the *Plaintiff's Rule 16 Statement* to be sent electronic mail, via CF/ECF, to the above-listed attorneys.

/s/ David E. Maglio, Esq.

h:\clients\gateway\water damage\fed ct pleadings\Rule 16 conference statement